## Whitt v. Commonwealth.

(Decided October 21, 1927.)

### Appeal from Floyd Circuit Court.

1. Homicide.—In prosecution for murder, evidence held insufficient to justify submission of case to jury as to defendant for aiding and abetting, where it was not shown that he shared in any crim-intent or purpose which prompted another to fire fatal shot.
2. Criminal Law.—To constitute one an "aider and abettor" to crime of murder, he must not only be on ground, and by presence aid, encourage, or incite principal to commit crime, but he must share criminal intent and purpose of principal.

CAUDILL & TACKETT for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

Opinion of the Court by Turner, Commissioner—Reversing.

Appellant, Bill Stanley, and Lillie Smith were jointly charged with the murder of Robie Scott. A conspiracy is charged, and it is likewise charged that Stanley did the shooting resulting in Scott's death, and that the other two were present aiding and abetting. It was further charged that appellant did the shooting, and the other two were present aiding and abetting. On appellant's separate trial he was found guilty of manslaughter and sentenced to five years' imprisonment, and this appeal results.

The evidence discloses: That all the parties involved, and many of the witnesses, were residents of a mining town named Garrett, in Floyd county, and its vicinity. That appellant and the witness Moore, on a morning in February, 1926, went to a mine operation on Stone Coal creek near Garrett. They first went to the drift mouth of the mine, which is some little distance from the office maintained there, and across a railroad track from the office. There they met and talked to several parties; there being some little contradiction in the evidence as to whether Stanley and Smith were at the drift mouth at the time appellant was, the preponderance of the evidence tending to show they had not then arrived there. However that may be, if they arrived before appellant left there is no evidence of any private talk or communication between appellant and either of them before he left and went across the railroad track to the office. When appellant left there to go to the office, three other persons left with him, but neither Stanley nor Smith was among them.

Decedent, Robie Scott, was a deputy constable, and was seen approaching from up the railroad track about the time appellant and his companions went over to the office. Scott had two warrants delivered to him that morning against appellant, charging him with violations of the prohibition law, and when he came up to appellant he notified him that he had such warrants, and possibly had one or more of them in his hand. Appellant declined to be arrested, and both he and Scott drew their pistols. There was no shooting, however right at the office, but appellant seems to have started away and Scott followed

him and called to him to stop.  Appellant did not stop but continued to leave, whereupon Scott fired one or two shots at him, and about that time reached a post, from behind which he continued to shoot at appellant.  Appellant turned, or partially turned, and emptied his pistol at Scott, and, finally, at the last or next to the last shot fired by Scott, appellant was wounded in the leg and fell. While this was going on Stanley and Smith came across from the drift mouth toward the office, and just after Scott had shot appellant and the latter had fallen Stanley fired one shot, which struck Scott and killed him.

There was a plat or map used on the trial below which is not in this transcript, and we are therefore at some disadvantage in describing the situation of the parties and their distance from each other; but as near as we can gather from the evidence the post from behind which Scott was firing at appellant was a considerable distance from where appellant fell, and Stanley was some 60 or 70 feet from Scott when he fired the shot that killed him, and in a different direction.

It is obvious that appellant was convicted as an aider and abettor, for the evidence unmistakably discloses that Stanley fired the shot which killed Scott.  The only question therefore necessary to determine is whether there was evidence justifying the submission of the case as against appellant as an aider and abettor, for, if there was not, the directed verdict of not guilty should have been given.  Whatever other crime or offense the evidence may show appellant guilty of, if he was not guilty of aiding and abetting Stanley in the homicide, then he was entitled to acquittal under this indictment.

There was a total lack of evidence of a conspiracy, and the trial court properly declined to instruct on that phase, and the remaining question is whether the evidence justified the submission, as to appellant, of aiding and abetting.  There is a total lack of evidence to show any concert of action between appellant and Stanley. When appellant resisted arrest and started to leave to evade arrest, neither Stanley nor Smith was present, and there is nothing to show that Stanley was interested in the avoiding of arrest by appellant, or in any way connected with the offenses charged against appellant in the warrants attempted to be executed by Scott.

It is clear that appellant in resisting arrest, and in firing at Scott, was attempting to do so to evade arrest,

and not only is there nothing to show that Stanley was interested in appellant's successful evasion of arrest but there is no evidence to show what prompted Stanley in firing the shot at Scott. Whether he had any other and different reason for firing at him is not disclosed, and there is no evidence that appellant advised, counseled, or incited him to fire that shot in any way, or that a word had been spoken between them in any way just prior to, during, or at the time of the difficulty.

The intent or purpose of appellant in firing at Scott is apparent, but there is a lack of evidence from which it may be surmised that Stanley in firing his shot shared the intent or purpose with which appellant had fired his, or in fact what his purpose was.

To constitute one an aider and abettor, he must not only be on the ground, and by his presence aid, encourage, or incite the principal to commit the crime, but he must share the criminal intent or purpose of the principal. As said in Landrum v. Commonwealth, 123 Ky. 472, 96 S. W. 587, 29 Ky. Law Rep. 924:

> "To constitute one an aider and abettor, sometimes called a principal in the second degree it is essential that he be present, actually or constructively, at the commission of the crime, and participate in it, sharing the criminal intent of the principal in the first degree."

In this case we have the intent which prompted appellant to commit the offenses committed by him, but there is a lack of evidence to show that he shared in any criminal intent or purpose which prompted Stanley to fire the fatal shot. So far as this record discloses, Stanley may have had some criminal intent totally foreign to and disconnected from the intent which prompted appellant; in other words, Stanley may have seized upon the opportunity thus presented to him to even up an old score with Scott with which appellant was totally disconnected, and with which criminal intent he had no connection and no sympathy.

The facts in evidence and the reasonable deductions from them fail to disclose that appellant aided or abetted Stanley, and, for that reason, he was entitled to a directed verdict of not guilty.

No other question is decided, but, because of the error pointed out, the judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.