**John Robert HAYNES et al., Appellants,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 25, 1974.

John N. Cornett, Whitesburg, for appellants.

Ed W. Hancock, Atty. Gen., James M. Ringo, Asst. Atty. Gen., Frankfort, for appellee.

PALMORE, Justice.

Upon receiving word that his two sons, the appellants John Robert and Tounsel

Haynes, were engaged in what might be called a "shoot-out" with William Caudill, the appellant Joe Haynes armed himself with a rifle, went to the scene of the affray, and shot and killed Caudill. The three Hayneses were jointly indicted for murder, found guilty of voluntary manslaughter, and sentenced to 7 years' imprisonment. KRS 435.020. They appeal.

The case on John Robert and Tounsel Ray as aiders and abettors is very close, falling somewhere between Smiddy v. Com., 210 Ky. 359, 275 S.W. 872 (1925), and Alexander v. Com., 285 Ky. 233, 147 S.W.2d 401 (1941), on the one side and our recent case of Willoughby v. Com., Ky., 510 S.W.2d 11 (1974), on the other. *Willoughby* itself was closer than the highly-touted Gillette shave, and the conviction was not affirmed without some degree of misgiving on the part of the individual members of this court. The question is, under what circumstances does a person engaged in an affray become an aider and abettor of another who intervenes uninvited, even assuming that they "share the criminal intent or purpose," cf. Whitt v. Com., 221 Ky. 490, 298 S.W. 1101, 1103 (1927)?

■ There is no evidence from which it may be reasonably inferred, as distinguished from speculation, that either of the sons sent for the father. There is no evidence even that John Robert knew he had arrived until after the killing. The clear weight of the evidence is that John Robert had stopped shooting before the father appeared and that Tounsel Ray never fired a shot during the entire proceeding. All that Tounsel Ray could have done that he did not do, as he lay in his place of protection behind a rock and saw his father's ap-

proach, was to ask him to stay back, but that omission would not itself amount to assistance or encouragement. Nor, of course, does the fact that Tounsel may have provoked the encounter. On balance, bearing in mind the great principle of reasonable doubt, we think the evidence here will not justify conviction of the sons as participants in the father's act.

■ Though slightly flawed in its reference to Joe Haynes' right to act in protection of "John Robert Haynes *and* Tounsel Ray Haynes" (our emphasis), the instruction on self-defense on the whole makes it reasonably clear that the right depended on his good-faith and reasonable belief that it was necessary to the protection of either or both of them. The point was further explicated by counsel for the defendants in his closing address to the jury. We are not persuaded that the jury could have been misled in that respect.

■ The trial court erred in excluding (as hearsay) what was told Joe Haynes immediately prior to his intervention, since it was a competent exception to the hearsay rule for the limited purpose of such bearing, if any, as it may have had upon his state of mind at the time of the shooting, but the question has not been pursued on the appeal.

It is unnecessary that we discuss possible prejudicial errors in the instructions with respect to John Robert and Tounsel Ray Haynes. As to Joe Haynes, there were none.

The judgment as to John Robert Haynes and Tounsel Ray Haynes is reversed. As to Joe Haynes it is affirmed.

All concur.