Clarence OLDFIELD, Sr., Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 12, 1960.

Rehearing Denied May 13, 1960.

Shumate & Shumate, Irvine, Rodney J. Thompson, Winchester, for appellant.

Jo M. Ferguson, Atty. Gen., Wm. F. Simpson, Asst. Atty. Gen., for appellee.

STANLEY, Commissioner.

The appellant, Clarence Oldfield, Sr., his son, son-in-law and three other men were jointly indicted for the murder of George Sales. The indictment charges that one of the accused did the actual killing and the others aided and abetted him. Upon his separate trial, the appellant was convicted of voluntary manslaughter, the verdict reciting that it was as an aider and abettor. His punishment was fixed at five years' imprisonment.

■ The appellant joined his co-defendants in a verified petition for a change of venue upon the ground that they could not have a fair and impartial trial in Powell County because of antagonistic public feeling and opinion. No specification or reason was stated. The affidavit of two citizens recited that they were acquainted with the state of public opinion in the county and "that they verily believe the statements of the petition for a change of venue are true." No other proof was introduced. It cannot be said that the trial court abused a judicial discretion in overruling the motion. Combs v. Commonwealth, 292 Ky. 1, 165 S.W.2d 832.

There were many witnesses and many contradictions. The details of the acts of the group of the defendants preceding the homicide and during the affray are not clear. Sales, who was nineteen years old, was killed by a shot in the back with a 38-caliber pistol, about eleven o'clock on a Sunday night, March 2, 1959, at a drive-in restaurant located about two miles north of Stanton. The fatal bullet lodged in his body and another bullet passed through. His body also bore bruises and abrasions.

It appears that four of the accused young men and others in their group, (referred to in the record as the Clark County boys) had been driving around the country that afternoon (or, as one of them described it, "just out *warping* around town") and ended up at this place at night. The deceased, Sales, also lived on Crowe Ridge in Clark County,

but his group of six or seven companions who lived in Powell County are referred to as the Powell County boys. It was well established that the Clark County boys were prepared for any eventuality, for there were several pistols in the crowd. Boys in both groups boasted of their valor and their ability to whip any of the others. Naturally, this precipitated a fight. There had been some previous trouble between the deceased and one of the appellant's sons, but it was discounted as unimportant.

Someone in the car with the appellant and his son-in-law, Dudley Palmer, fired a pistol out through its rear window. Then the appellant and four other occupants of the car jumped out, and the appellant "started toward" Sales with his shotgun in his hand. Sales ran and the appellant pursued him, shooting his gun at him several times. A general shooting by six or seven of the Clark County boys followed. The Commonwealth's evidence is to the further effect that the appellant was not only present and encouraging his son's group, but that after Sales had been shot with a pistol and was pleading with his assailants not to shoot again, he, the appellant, fired his gun four or five times at him. There is evidence that the deceased did not have a weapon or fire a shot, but this is contradicted. Indeed, the Commonwealth's evidence tends to show that none of his crowd of young men were armed. There were some small holes in the deceased's jacket or coat which the Commonwealth contended were made by bullets and by shotgun pellets, but it does not appear that any pellets struck Sales' body.

Robert Thomas, one of the Clark County boys, was in the appellant's car when the trouble started. Whether he fired a pistol at the deceased is in controversy. One witness said that Thomas had shot Sales in the back while he was running away. Thomas committed suicide some days later.

The appellant, who was 56 years old, testified that he and his son-in-law had gone out looking for a younger son who was staying out too late, and that they had gone

348

to the restaurant to find him. It had been his custom to have a shotgun in his car since he was "held up" about three years before. He testified that George Sales was shooting into his car and that he did not shoot at Sales or anyone else but had fired his gun into the ground and into the air in order to frighten the boys and stop the fight. There is corroborative evidence. There was a bullet hole in the windshield as well as the rear window of his car. The defendant claimed both were caused by bullets from the outside, while the Commonwealth's evidence is each was fired from the inside. In short, the evidence of the defense contradicted much of the Commonwealth's evidence and tends to show that the deceased and his Powell County companions were the aggressors.

■ There is other evidence of a general character which showed that the appellant was more than an innocent onlooker. He had interjected himself into the affray. One who participates in an affray or by his conduct or oral expressions encourages and assists the actual perpetration of a felony is equally as guilty as the one who actually commits it.

■ The appellant proved he had a good reputation, and it is likely that his presence at the place was not prearranged. However that may be, we think even the brief outline of the more material evidence presented by the Commonwealth reveals that the court could not consistently have directed an acquittal and that the evidence sustains the verdict.

■■ The appellant argues that it was error to instruct that he might be found guilty as a principal because the deceased was killed with a pistol and not a shotgun, the only weapon the appellant had on the occasion. We do not regard the instruction erroneous, for one who participates in or shares in the criminal intent in the commission of a felony, either separately or collectively, is responsible for the whole crime the same as if performed by himself alone.

Waggner v. Commonwealth, 298 Ky. 153, 182 S.W.2d 661. But in any event, since the appellant was expressly found guilty as an aider and abettor, he is not in a position to make this complaint.

■■ Nor was it error to instruct on aiding and abetting because the evidence did not identify the principal. It is true, as appellant contends, that the Commonwealth is required to show guilt of a principal in the commission of a homicide before there can be a conviction of another person as an aider and abettor. Bryant v. Commonwealth, Ky., 277 S.W.2d 55. But in this case there was abundant evidence to have justified the jury in returning a verdict of murder or voluntary manslaughter. It was not necessary, as appellant seems to contend, that the evidence must have identified the individual who actually fired the fatal shot. Crenshaw v. Commonwealth, 227 Ky. 223, 12 S.W.2d 336. The principal in this case was identified as being one of the other participants in the affray.

■ The only complaint as to the form of the instructions is as to the conclusion of the instruction on self-defense and the defense of the appellant's companions. Following the conditions, it concludes, "then you should acquit the defendant on the ground of self-defense of another and apparent necessity therefor." It is apparent to us, as we believe it was to the jury, that there was an inadvertent omission of the words "or defense" before the words "of another." No criticism is made of the body of the instruction. We regard the general instruction to find the defendant not guilty if the jury "upon the whole case" had a reasonable doubt of the defendant having been proven guilty as fully protecting the rights of the defendant, notwithstanding the technical error. Cf. Underwood v. Commonwealth, 266 Ky. 613, 99 S.W.2d 467. We think it would be better, however, merely to conclude such form of instruction with the clause "then the jury will find the defendant not guilty," for the grounds have been already stated. This seems to be the

customary conclusion. §§ 892, 893, Instructions to Juries, Stanley.

Finally, the appellant submits the Commonwealth's attorney was guilty of making inflammatory and prejudicial argument, as well as misquoting the evidence. Another view of what the appellant regards as inflammatory is that it was but vigorous forensics of prosecutors to which jurors are accustomed. Some of the argument about which complaint is made was calculated to offend the jurors and prejudice them against the orator rather than to influence them in reaching a verdict of guilty. No objection was made to much of the argument complained of, and that to which an objection was made cannot be regarded as having been prejudicial to the defendant.

We conclude the judgment should be and it is

Affirmed.